UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HOWARD L. BOYD,     Plaintiff,  v.  UNITED PARCEL SERVICE, INC., et al.,     Defendants. | Case No. 3:24-cv-00651  Judge Aleta A. Trauger  Magistrate Judge Alistair E. Newbern |

To:   The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

This civil action arises out of pro se Plaintiff Howard L. Boyd's employment with Defendants United Parcel Service, Inc. (UPS) and UPS Manager Robert Vaughan. (Doc. No. 1.) UPS and Vaughan filed a motion to dismiss Boyd's complaint under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). (Doc. No. 11.) They argue that dismissal is warranted because Boyd has not effected proper service of process on Vaughan and that Boyd's complaint fails to allege any plausible claims for relief against Vaughan or UPS. (Doc. No. 12.) Boyd filed a response arguing that he properly served Vaughan and that his complaint adequately alleges defamation claims against Vaughan and UPS. (Doc. No. 15.) Vaughan states, however, that he "withdraws" his other claims against the defendants. (*Id.* at PageID# 64, ¶¶ 3, 4.) The defendants filed a reply in support of their motion to dismiss. (Doc. No. 16.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant UPS and Vaughan's motion and dismiss this action.

## I. Background

### A. Factual Background[1]

Boyd worked part-time for UPS at its Whites Creek Hub from 2014 until 2021. (Doc. No. 1.) He began "as a temporary-seasonal-package handler during the 2014 Christmas Season" and "was hired as a regular part-time hourly-paid employee" in January 2015. (*Id.* at PageID# 3, ¶ 10.) UPS promoted Boyd to supervisory positions in which Boyd reported to Vaughan, who was the center manager. (Doc. No. 1.)

Boyd alleges that, from November 2019 until March 2020, "a UPS hourly-paid female employee" who "occasionally worked under [Boyd's] supervision" "attempted to seduce [Boyd], both in the workplace and away from the workplace, into a sexual relationship." (*Id.* at PageID# 4, ¶ 15.) Boyd states that, on "March 29, 2020, while working for [him] on a home renovation project, the Hourly [female employee] became angry when [Boyd] would not engage her in a sexual encounter." (*Id.*) "[I]n an act of revenge, [she] registered a complaint against [Boyd] with UPS's Human Resources Department ('HR') . . . ." (*Id.* at ¶ 16.) Boyd states that there was "no evidence of harassment that would rise to the level of illegality, let alone sexual harassment," but HR and "Vaughan were quick to take action against [Boyd], make demands of [him,] and issue veil[ed] threats of termination." (*Id.* at PageID# 5, ¶ 17.)

Boyd presented HR with "a formal written complaint of sexual harassment against the Hourly[,]" but "[a]t no point [in] time did [HR], Vaughan[,] or anyone else representing UPS ever conduct an investigation into [Boyd's] written complaint." (*Id.* at ¶ 18.) Boyd alleges that "no credence was given to [his] written complaint and [it] was dismissed by [HR] and Vaughan as

---

[1] The facts in this section are drawn from Boyd's complaint (Doc. No. 1) and accepted as true for purposes of analyzing the defendants' dismissal arguments under Rule 12(b)(6). *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

nonsense" "[b]ecause [Boyd] is male, over the age of 40 and substantially older than the Hourly[.]" (*Id.*) Boyd states that, "[i]n late May of 2021, after over one year of scrutiny, harassment[,] and conditions being placed on his employment, [he] gave a two-week notice to resign from UPS." (*Id.* at ¶ 20.) Boyd "worked his last day at UPS" "[o]n April 9, 2021[.]" (*Id.*) He states that he "left o[n] good terms, and with a positive rehire status." (*Id.* at PageID# 6, ¶ 20.)

Beginning "[o]n April 7, 2022, [Boyd] represented himself, *pro se*, in a lawsuit against UPS for harassment," alleging that UPS engaged in "repetitive, year-long gender and age discriminatory behaviors" toward him. (*Id.* at ¶ 21.) Boyd states that his "lawsuit was dismissed" "[i]n December of 2022[.]"[2] (*Id.*)

Boyd "work[ed] for another employer" from May 2021 until the "new employer closed their doors" "[o]n July 31, 2023[.]" (*Id.* at ¶ 22.) In October 2023, Boyd "received an email from UPS Careers, inviting him to apply for positions at UPS." (*Id.* at ¶ 23.) Boyd "contacted UPS's HR department regarding rehires, and [he] was told that [he] ha[d] a positive rehire status." (*Id.*) Boyd applied for an open position at UPS's Whites Creek hub in late October or early November of 2023 but, "[o]n or about November 9, 2023, [Boyd] received an email notice from UPS [ ] informing him that his application was not successful." (*Id.* at ¶ 24.) Boyd states that, "[u]pon inquiry, [he] learned from others at the UPS Whites Creek facility[ ] that Vaughan had blocked [Boyd's] rehire by instructi[ng] others not to hire [him], stating that [Vaughan] had placed [Boyd] on the non-rehire list." (*Id.*) On November 10, 2023, Boyd "called UPS's Talent Acquisition team,

---

[2] *See Boyd v. United Parcel Serv.*, Civ. Action No. 3:22-cv-00422, 2022 WL 17844020, (M.D. Tenn. Oct. 12, 2022) (recommending dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief can be granted), *report and recommendation adopted*, 2022 WL 17836682 (M.D. Tenn. Dec. 21, 2022).

and was informed that [he] had a positive rehire status, and that [he] had ***not*** been placed on the non-rehire list." (*Id.* at PageID# 7, ¶ 25.)

Boyd states that, "[o]n or about [ ] November . . . 4, 15[,] and 16, of 2023, [he] again received email invitations from UPS Careers, and again applied for positions, including positions at [other] facilities" but, "[e]ach time, [his] application was rejected, and each time [he] learned that his rejection was because Vaughan had told the hiring manager not to hire [Boyd] because Vaughan had placed [Boyd] on the non-rehire list." (*Id.* at PageID# 7, ¶ 26.) "After each rejection, [Boyd] contacted UPS's Talent Acquisition team, and each time [Boyd] was told that he had a positive rehire status, and was not on the non-rehire list." (*Id.* at ¶ 27.) Eventually, "UPS's Talent Acquisition Team informed [Boyd] that they would investigate the matter." (*Id.* at ¶ 28.) On "November 29, 2023, [Boyd] was told that in the prior week, he had 'now' been placed on the non-rehire list, by Vaughan, and stated that [Boyd] had been listed as a security risk." (*Id.*)

### B. Procedural History

Boyd initiated this action on May 28, 2024, by filing a complaint against UPS and Vaughan. (Doc. No. 1.) Boyd asserts claims of retaliation, harassment, and defamation in violation of Title VII of the Civil Rights Act of 1964 and Tennessee law. (*Id.*) He alleges that "UPS is liable" for Vaughan's actions because UPS "empowered [Vaughan] to make tangible employment decisions regarding [its] employees[.]" (*Id.* at PageID# 8, ¶ 31.) Boyd seeks compensatory and punitive damages. (Doc. No. 1.) At Boyd's request, the Clerk of Court issued summonses addressed to UPS and to Vaughan on the day that Boyd filed his complaint. (Doc. No. 5.) Boyd returned the summonses as executed on June 10, 2024, declaring that he served UPS and Vaughan via certified mail and attaching signed return receipts. (Doc. Nos. 6, 7.)

The Court referred this action to the Magistrate Judge to resolve or recommend resolution of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 8.)

UPS and Vaughan appeared (Doc. No. 9) and, on June 26, 2024, filed a motion to dismiss Boyd's complaint under Federal Rule of Civil Procedure 12(b)(5) and 12(b)(6) (Doc. No. 11). The defendants argue that Boyd's claims against Vaughan are subject to dismissal under Rule 12(b)(5) because Boyd's service on Vaughan was deficient and that Boyd's claims against Vaughan and UPS are subject to dismissal under Rule 12(b)(6) because they are insufficiently pleaded. (Doc. No. 12.)

Boyd filed a response in opposition to UPS and Vaughan's motion, arguing that "Vaughan was sufficiently served under [Rule] 4(e)(1)" and that his "claims are articulated well enough that the [d]efendants' request for dismissal under [ ] Rule 12(b)(6) should be denied." (Doc. No. 15, PageID# 63, 64, ¶¶ 1, 2.) Boyd states that he "withdraws" his retaliation and harassment claims against the defendants. (*Id.* at PageID# 64, ¶¶ 3, 4.)

UPS and Vaughan filed a reply. (Doc. No. 16.)

## II. Legal Standards

### A. Sufficiency of Service Under Rule 12(b)(5)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) challenges "the manner or method of service" of a summons or complaint. *Buck Mountain Cmty. Org. v. Tenn. Valley Auth.*, 629 F. Supp. 2d 785, 792 n.5 (M.D. Tenn. 2009); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (4th ed. suppl. June 2024) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." (footnotes omitted)). "In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service[,]" including "uncontroverted affidavits . . . ." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006); *see also Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (finding that courts considering

Rule 12(b)(5) motions "'may look to "record evidence" and "uncontroverted affidavits" in determining'" sufficiency of service (quoting *Chapman v. Lawson*, 89 F. Supp. 3d 959, 971 (S.D. Ohio 2015))). The plaintiff bears the burden to establish that service was proper. *Spencer*, 516 F. Supp. 3d at 758; *Sawyer v. Lexington-Fayette Urb. Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

### B. Sufficiency of Claims Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Boyd appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

Boyd has withdrawn his retaliation and harassment claims. (Doc. No. 15.) The Court will therefore address UPS and Vaughan's motion to dismiss only as it relates to service on Vaughan and Boyd's defamation claims against UPS and Vaughan.

#### A. Sufficiency of Service on Vaughn

Federal Rule of Civil Procedure 4(e) provides two methods for serving individuals within a judicial district of the United States. Fed. R. Civ. P. 4(e). First, service may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). Second, service may be made by: (1) "delivering a copy of the summons and of the complaint to the individual personally"; (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(A)–(C).

Boyd argues that he satisfied Rule 4(e)(1) by serving Vaughan via certified mail in compliance with Tennessee Rule of Civil Procedure 4.04(10). (Doc. No. 15.) Tennessee Rule of Civil Procedure 4.04(10) provides that "[s]ervice by mail of a summons and complaint upon a

7

Case 3:24-cv-00651    Document 17    Filed 12/03/24    Page 7 of 11 PageID #: 85

defendant may be made by the plaintiff, the plaintiff's attorney or by any person authorized by statute." Tenn. R. Civ. P. 4.04(10). However, Tennessee Rule of Civil Procedure 4.03(2) requires any party attempting service by mail to file with the clerk the original summons, an affidavit from the person who served the documents, and the return receipt. Tenn. R. Civ. P. 4.03(2). Rule 4.03(2) further provides that service by mail is only complete "[i]f the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute." Tenn. R. Civ. P. 4.03(2). In *Hall v. Haynes*, 319 S.W. 3d 564 (2010), the Tennessee Supreme Court explained that "Rule 4.03's explicit restriction of whom [sic] may sign the return receipt" generally requires "'that the return receipt be signed by the defendant and no one else.'" *Id.* at 577 (quoting Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 2–3(v) (2d ed. 2004)); *see also id.* (discussing *Edwards v. Campbell*, No. E2000-01463-COA-R3-CV, 2001 WL 52776 (Tenn. Ct. App. Jan. 23, 2001), in which service effected by certified mail was not valid under Rule 4.03 even though the wife and mother of the respective defendants had signed the return receipts because they were not designated by Rule 4.04 or statute to do so).

Here, Vaughan argues that Boyd did not complete service by mail in accordance with Tennessee law because the return receipt that Boyd filed "was signed by a non-party, 'Angie Vaughan.'" (Doc. No. 12, PageID# 45.) Boyd does not dispute that Vaughn did not personally sign the return receipt, and the copy of the return receipt in the record bears the signature of "Angie Vaughan[.]" (Doc. No. 7, PageID# 28.) It is well established under Tennessee law "that a person with the authority to sign for and receive certified mail does not, without more, qualify as an agent authorized by appointment to receive service of process on behalf of an individual defendant." *Hall*, 319 S.W. 3d at 581; *see also Brown v. CoreCivic*, No. 3:22-cv-00547, 2023 WL 3656868, at *3 (M.D. Tenn. May 25, 2023) (Trauger, J.) (quoting *id.*). Boyd has not argued that Angie Vaughan

is a "person designated by Rule 4.04 or by statute" to accept service on Vaughan's behalf. Tenn. R. Civ. P. 4.03(2). Boyd therefore has not established that he properly served Vaughan.

B.     **Sufficiency of Boyd's Defamation Claims Against Vaughan and UPS**

To state a claim for defamation under Tennessee law, a "plaintiff must allege that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other or with reckless disregard for the truth of the statement; or (3) with negligence in failing to ascertain the truth of the statement." *Mcpherson v. Vignobles Sullivan, LLC*, No. 3:20-cv-00384, 2020 WL 7624173, at *2 (M.D. Tenn. Dec. 22, 2020) (citing *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). "'Publication' is a term of art meaning the communication of defamatory matter to a third person." *Sullivan*, 995 S.W.2d at 571.

"In Tennessee, communications among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons." *Mcpherson*, 2020 WL 7624173, at *2 (quoting *Sikoski v. Eaton Leonard USA*, Case No. 3:05-0641, 2005 WL 3079075, at *1 (M.D. Tenn. Nov. 16, 2005)); *see also Siegfried v. Grand Krewe of Sphinx*, No. W2002-02246-COA-R3-CV, 2003 WL 22888908, at *2 (Tenn. Ct. App. Dec. 2, 2003) ("It is well settled that no publication occurs when only intra-corporate communications exist as evidenced by the Tennessee Supreme Court stating 'it is announced that communication between officers and agents of a corporation . . . is not publication of libelous matter.'" (alteration in original) (quoting *Freeman v. Dayton Scale Co.*, 19 S.W.2d 255, 257 (Tenn. 1929))). The rationale behind this "rule is that publication requires 'the communication of a defamatory matter to a third person' and 'communication among agents of the same corporation . . . are not to be considered as statements communicated or publicized to third persons.'" *Siegfried*, 2003 WL 22888908, at *2 (quoting *Sullivan*, 995 S.W.2d at 572).

Boyd alleges that Vaughan, in his position at UPS, "was, and still is, empowered to make tangible employment decisions pertaining to employees, . . . includ[ing] the decision to place former employees on the non-rehire list." (Doc. No. 1, PageID# 4, ¶ 13.) Boyd states that, from late-October to mid-November of 2023, Vaughan repeatedly "blocked [Boyd's] rehire by instructi[ng] others not to hire [Boyd], stating that he had placed [Boyd] on the non-rehire list." (*Id.* at PageID# 6, ¶ 24.) Specifically, "Vaughan [ ] told the hiring manager not to hire [Boyd] [ ] because Vaughan had placed [Boyd] on the non-rehire list." (*Id.* at PageID# 7, ¶ 26.) Boyd alleges that Vaughan's statements were false because "UPS's Talent Acquisition team" told Boyd "that he had a positive rehire status, and was not on the non-rehire list" until the week before November 29, 2023. (*Id.* at ¶ 27.) At that point, the talent acquisition team informed Boyd that " he had 'now' been placed on the non-rehire list, by Vaughan, and . . . had been listed as a security risk." (*Id.* at ¶ 28.) Boyd alleges that Vaughan defamed him by "instruct[ing] others not to hire [Boyd], claiming to have placed [Boyd] on [UPS's] non-rehire list, when in fact he had not" and by "declar[ing] [Boyd] a security risk, without any supporting evidence[.]" (*Id.* at PageID# 10, ¶¶ 42, 45.) Boyd alleges that "UPS is liable" for Vaughan's actions because "Vaughan represents UPS" and is "empowered to make tangible employment decisions regarding [UPS] employees[.]"[3] (*Id.* at PageID# 8, ¶ 31.)

---

[3] Tennessee law provides that, "[u]nder the doctrine of *respondeat superior*, an employer may be liable for acts committed by an employee while acting in the course and scope of his employment." *Warren v. Warrior Golf Cap., LLC*, 126 F. Supp. 3d 988, 996 (E.D. Tenn. 2015) (citing *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992)). "[T]o hold the employer liable, the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Id.*

These allegations are insufficient to state a claim that Vaughan published a false statement to third parties. While Boyd has alleged that Vaughan told other UPS employees including hiring managers that Boyd was on the non-hire list and was a security threat, the Court cannot plausibly infer from the allegations in the complaint that these statements were communicated outside the company. Boyd argues that "[p]ublication can, and does, transpire within an organization" and that, "[w]hen a manager or supervisor knowingly makes a false statement about an employee, supervisor[,] or another manager to a third-party within an organization, that is a 'published statement'." (Doc. No. 15, PageID# 64–65.) But Boyd has not identified any authority to support this argument and Tennessee courts disagree.

Accordingly, because Boyd has not sufficiently alleged publication, his defamation claims against Vaughan and UPS are subject to dismissal under Rule 12(b)(6). *See Mcpherson*, 2020 WL 7624173, at *3 (citing *Woods v. Helmi*, 758 S.W.2d 219, 223 (Tenn. Ct. App. 1988)).

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that UPS and Vaughan's motion to dismiss (Doc. No. 11) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 3rd day of December, 2024.

ALISTAIR E. NEWBERN
United States Magistrate Judge